IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DARYL ANDRUS, | ) |
|    Plaintiff, | ) |
| v. | )    C.A. 08-251-GMS |
| CORRECTIONAL MEDICAL SERVICES, Inc, et al, | ) |
|    Defendants. | |

### ANDRUS' ADDENDUM TO HIS MOTION FOR PRELIMINARY INJUNCTION FOR EMERGENCY MEDICAL CARE DUE TO IMMINENT DANGER AND HARM

COMES NOW, pro se plaintiff, Daryl Andrus (Andrus) pursuant to the appropriate FRCP or Local Rules, and seeks leave to file the instant Addendum to his now pending PI motion, which seeks emergency medical care due to imminent harm and significant and undue serious pain and suffering. Andrus seeks pleading leniency under *Haines v. Kerner*, 404 U.S. 519 (1974).

1. Andrus filed the above captioned action in mid-April 2008 along with the aforementioned PI motion, which sought emergency medical care for Andrus' serious medical conditions. Specifically, in part, Andrus attested to having a documented serious spinal injury and that this was a serious medical condition requires continuous, adequate, and uninterrupted pain, muscle, and nerve damage medications (i.e. Chronic-care Meds "CC-Meds"); however, the health care vendor Correctional Medical Services, Inc, ("CMS") denies said CC-Meds to Andrus and thus causes Andrus to experience undue significant pain and suffering, impairment of his normal daily activities, mental and emotional distress, and a significant and unacceptably high risk of serious future injuries via falling or collapsing incidents.

2. There are no legitimate medical factors present for CMS to repeatedly refuse to comply with the treating physicians' orders to provide Andrus his prescribed pain, muscle, and nerve damage medications.

3. For example, Andrus filed four formal "Emergency Medical Grievances" ("EMG"), in response to CMS's continuous and pervasive refusals to comply with the treating physicians' orders for care:

    1. EMG # 053108, dated 03-12-08;
    2. EMG # 157592, dated 04-15-08;
    3. EMG # 160074, dated 05-09-08; and
    4. EMG # 161324, dated 06-09-08 (See Exhibit A).



FILED
JUL 1 1 2008
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

4. All four EMGs were referred to defendant John Doe Director (i.e. CMS Director Ronnie Moore), for investigation and corrective action, however, despite this obvious systemic breakdown in the "Nurse Administered" CC-Meds (i.e. complying with the treating physicians' orders), CMS refuses to take any corrective action whatsoever. Indeed, Andrus even contacted the CMS Ombudsman, defendant Wilkens, but to no avail. (See Ex-B).

5. It is obvious that this systemic breakdown requires immediate corrective action, because it is the very same Systemic Breakdown that the Federal Justice Department uncovered and reported on back in December 2006, and then again the State's Independent Monitor revealed it as an on going and uncorrected problem subsequently in 2007. The Systemic Breakdown uncovered in the Justice Department's Report (See Exhibit C) p 8-9) is identical to Andrus' claim and regards the same Nurses Administration, the same health care vendor, and the same facility. (Ex-C at p 8-9 Med Admin.)

6. On 07-07-08 CMS again refused to comply with the treating physician's orders for medical care: for instance, Doctor McDonald issued an order on or about 04-26-08 for Andrus to receive both Ultram three times daily and Soma twice daily for a period of Ninety days. (i.e. CC-Meds). Thus, Andrus' CC-Meds order is good through to 07-26-08, before any additional Clinic need be scheduled to Refill another subsequent prescription.

7. However, on 07-06-08, Andrus reported to the Pharmacy Window for his Nurse Administered CC-Meds, but the Nurse denied Andrus his CC-Meds despite Andrus having a current and valid doctor's prescription for same. Andrus was informed that they had run out and that he would not receive any before 07-09-08 at the earliest.

8. The Pharmacy Nurse refused to check for any "Stock Supplies" and refused to contact the treating physician for the purpose of determining and providing an adequate alternative pain medication during the interim despite the fact that Andrus' order was still good through 07-26-08.

9. In a few short hours Andrus was rendered incapacitated and bed ridden; his body raked with excruciating pain and aggravated with severe involuntary muscle spasms in his right leg and foot.

10. Andrus was unable to walk to the Meal Hall and missed his dinner on 07-06-08 as a result.

11. Any layman can discern the obvious emergency need for Andrus to receive immediate doctor's care and attention on each and every occasion CMS denies Andrus his doctor's prescribed CC-Meds. (See Ex-D Affidavit of Williamson and Affidavit of Wilson).

12. Andrus immediately filed another EMG on 07-07-08, but has yet to receive the processed copy back from CMS officials.

13. Consequently, written complaints and formal grievances –as well as the presence of an Agreement between the State of Delaware and Federal Justice Department for very same Systemic Breakdown in Nurse Administered Medications- has failed to induce CMS to employ any meaningful corrective measures to ensure that (a) the treating physicians' orders are carried out and (b) that the emergency medical needs of Andrus are addressed in an adequate and timely manner.

WHEREFORE, Andrus prays that this Honorable Court issue the following in addition with Andrus' initial PI request:

1. Schedule a PI hearing and notify defendant Correctional Medical Services at the Court's earliest possible convenience;
2. Order CMS to provide Andrus' Medical Records;
3. Order CMS to provide the appropriate logs, etc of the Nurse's Administered CC-Meds as they relate to Andrus' CC-Meds, Pharmacy Orders and Invoices for same for the past two years; and
4. Order CMS to provide a "Plan" to eliminate CC-Med denials and/or interruptions (e.g. Perhaps by keeping ample Stock Supplies, Order adequate amounts to comply with treating physicians' prescriptions, and/or determine suitable temporary alternatives….).

_Daryl Andrus_  
Daryl Andrus

7/07/08  
Date

# Exhibit A

JTVCC James T. Vaughn Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

Date: 06/30/2008

C 10

## GRIEVANCE INFORMATION - Appeal

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| Offender Name : ANDRUS, DARYL G | SBI# : 00101816 | Institution : JTVCC |
| Grievance # : 153108 | Grievance Date : 03/12/2008 | Category : Individual |
| Status : Unresolved | Resolution Status : | Inmate Status : |
| Grievance Type: Health Issue (Medical) | Incident Date : 03/03/2008 | Incident Time : |
| IGC : Merson, Lise M | Housing Location : Bldg S1, Tier C, Cell 10, Single | |

### APPEAL REQUEST

This grievance was the latest in an on going and pervasive problem in which CMS would either inexplicably, unilaterally, and with gross reckless disregard abruptly (a) deny me my required chronic care meds for my documented spinal injuries and/or (b) substitute a semi-effective cc med combination for a known and/or likely less efficacious and/or contraindicative (i.e. dangerous to my known existing conditions: Hep C and compromised heart) meds. moreover, said acts or omissions were absent any legitimate medical factors and actually contrary to known legitimate medical factors and did cause me both undue pain and suffering and permanent damage (i.e. heart attack) and/or significant and likely risk of future residual tangible injuries - again absent any documented, legitimate medical or penological factors. This behavior continues despite my documented and obvious pain and suffering and despite some seven formal medical grievances. Meaningful corrective action is required but CMS refuses to do so.

### REMEDY REQUEST

Insure that I no further am exposed to undue pain or suffering and/or significant risk of permanent injuries by (1) Not issuing either contraindicative meds (i.e. hep C liver or compromised heart); (2) Not issuing less efficacious cc-meds; (3) correct repeat and pervasive denials of effective cc-meds; (4) comply with treating physician's orders; (5) assess damages.

DCC Delaware Correctional Center  Date: 04/30/2008
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

# GRIEVANCE REPORT

## OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Offender Name**: ANDRUS, DARYL G | **SBI#**: 00101816 | **Institution**: DCC |
| **Grievance #**: 157592 | **Grievance Date**: 04/15/2008 | **Category**: Individual |
| **Status**: Unresolved | **Resolution Status**: | **Resol. Date**: |
| **Grievance Type**: Health Issue (Medical) | **Incident Date**: 04/15/2008 | **Incident Time**: |
| **IGC**: Dutton, Matthew | **Housing Location**: Bldg S1, Tier C, Cell 10, Single | |

## OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** Inmate Claims: I was prescribed Lactose due to high ammonia levels in my blood serum. The high ammonia is cause by my chronic Hep C. It also causes mental confusion and cognitive impairments. Thus, it is clearly needed, however, though a "Doctor" ordered that I receive Nurse Adminsitered Lactose 2 times a day, the meds nurses have frequently failed to carry out VanDusen's (eg. doctor) order. For instance, I was shorted doses on the following: 4-13-08 (:30 pm. -Most recent incident, 4-11-08, 4-5, 4-4, 4-3, 3-29, 3-26 and 3-24-08.

**Remedy Requested:** Inmate Action Requested: 1) Insure that doctor's prescription/orders are carried out: a) Have Chronic-care patients initial a nurse administered medication "log" to verify/record said dosage; b) when nurse's forget a dose - call patient in for immediate dose; and 2) Assess damages to deter this frequent and on going behavior.

## INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|---|---|---|
| | | |

## ADDITIONAL GRIEVANCE INFORMATION

**Medical Grievance**: YES  **Date Received by Medical Unit**: 04/30/2008
**Investigation Sent**: 04/30/2008  **Investigation Sent To**: Moore, Ronnie
**Grievance Amount**:

DCC  Delaware Correctional Center  
Smyrna Landing Road  
SMYRNA DE, 19977  
Phone No. 302-653-9261

Date: 06/02/2008

# GRIEVANCE REPORT

## OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| Offender Name : ANDRUS, DARYL G | SBI# : 00101816 | Institution : DCC |
| Grievance # : 160074 | Grievance Date : 05/09/2008 | Category : Individual |
| Status : Unresolved | Resolution Status : | Resol. Date : |
| Grievance Type: Medical Staff | Incident Date : 05/05/2008 | Incident Time : 16:00 |
| IGC : Dutton, Matthew | Housing Location : Bldg S1, Tier C, Cell 10, Single | |

## OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** On 5/5/08 the nurse failed to provide me my doctor's prescribed Baclofen at the 1600 nurse administered chronic care meds. On 5/6/05 I began a new chronic care med. prescription (i.e. Ultram & Soma) but again the meds nurse failed to administer either of my doctor's prescription /order regarding y needed chronic care pain meds.( i.e. serious medical condition) causes me to experience undue significant pain and suffering and impairment of my normal daily activities. (e.g. I was unable o sleep at all the night of 5/6/08) This is an on going problem that requires immediate corrective action, and despite knowledge of same CMS refuses to correct this known problem. This equates to deliberate indifference by CMS.

**Remedy Requested :** 1. Ensure chronic care patients receive their doctor prescribed med at the allotted times by having said patients initial a personal cc med log when the nurses administer their meds or sigh a refusal form; 2. Alternatively, distribute Andrus' cc meds as KOP; and 3. Assess damages for these ongoing violations.

## INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|---|---|---|
| | | |

## ADDITIONAL GRIEVANCE INFORMATION

Medical Grievance : YES  
Investigation Sent : 06/02/2008  
Grievance Amount :

Date Received by Medical Unit : 06/02/2008  
Investigation Sent To : Moore, Ronnie

DCC Delaware Correctional Center  
Smyrna Landing Road  
SMYRNA DE, 19977  
Phone No. 302-653-9261  

Date: 06/18/2008

# GRIEVANCE REPORT

## OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| **Offender Name**: ANDRUS, DARYL G | **SBI#** : 00101816 | **Institution** : DCC |
| **Grievance #** : 161324 | **Grievance Date** : 06/09/2008 | **Category** : Individual |
| **Status** : Unresolved | **Resolution Status** : | **Resol. Date** : |
| **Grievance Type**: Health Issue (Medical) | **Incident Date** : 06/09/2008 | **Incident Time** : |
| **IGC** : Dutton, Matthew | **Housing Location** : Bldg S1, Tier C, Cell 10, Single | |

### OFFENDER GRIEVANCE DETAILS

**Description of Complaint:** Inmate claims: CMS staff (medical) continue to refuse to carry out the treating physicians orders with gross reckless disregard to my known / diagnosed serious medical condition (ie. spinal, leg & nerve damage from gun shot wound). For example, on 5-30-08 the nurse administered medication window was arbitrarily and capriciously closed and I was denied my prescribed chronic care meds. The most recent incident occurred on 6-8-08 when no medications were distributed for the late pm (eg. 9:00pm) Nurse administered CC-meds (except insulin) at all. Consequently, CMS staff continue to refuse to carry out the treating physicians orders and thus cause me significant pain and suffering, significant mental and emotional suffering, and significant impairment of my normal daily activities absent any legit medical factors.

**Remedy Requested** : (1) Insure my doctors prescribed CC-meds are provided as ordered; (2) create procedure to correct this continuing systemic breakdown in services; and/or (3) Authorize my CC-meds to be KOP meds, which could eliminate the nurses admin; and (4) acess damages

### INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|---|---|---|
| | | |

### ADDITIONAL GRIEVANCE INFORMATION

| | |
|---|---|
| **Medical Grievance** : YES | **Date Received by Medical Unit** : 06/18/2008 |
| **Investigation Sent** : 06/18/2008 | **Investigation Sent To** : Moore, Ronnie |
| **Grievance Amount** : | |

Page 1 of 3

DCC Delaware Correctional Center  
Smyrna Landing Road  
SMYRNA DE, 19977  
Phone No. 302-653-9261

Date: 06/18/2008

# INFORMAL RESOLUTION

## OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| Offender Name : ANDRUS, DARYL G | SBI# : 00101816 | Institution : DCC |
| Grievance # : 161324 | Grievance Date : 06/09/2008 | Category : Individual |
| Status : Unresolved | Resolution Status: | Inmate Status : |
| Grievance Type: Health Issue (Medical) | Incident Date : 06/09/2008 | Incident Time : |
| IGC : Dutton, Matthew | Housing Location :Bldg S1, Tier C, Cell 10, Single | |

### INFORMAL RESOLUTION

Investigator Name : Moore, Ronnie        Date of Report  06/18/2008

Investigation Report :

Reason for Referring:

Offender's Signature:_____

Date          :_____

Witness (Officer) :_____

# Exhibit B

Darryl Andrus
SBI # 101816
S-1, C-10
1181 Paddock Rd.
Smyrna, DE 19977

Honorable Carl Danberg, Commissioner of Corrections
Re: Notice of Arbitrary and Capricious Repeat Denials of Chronic-care Medications

Mr. Danberg:

    I am a chronic-care patient who suffers continuous, acute back and leg pain, severe involuntary muscle spasms, and partial paralysis from a gun-shot wound to the spinal area. My chronic-care condition is a serious medical condition which requires continuous and adequate medications (i.e. muscle relaxers, and nerve damage and pain meds). However, despite the fact that I have a doctor's prescription for said CC-Meds, the nurses/staff responsible for the administration of said meds frequently fail and/or refuse to carry out the treating physicians' orders and either repeatedly short my prescription allotment or they deny it completely without cause.

    There is no legitimate medical or penological reason for these on going acts, and it is often done with gross reckless disregard to my suffering and other patients' suffering. For instance, on 05-30-08, no 9:00 AM nurse administered CC-Meds were distributed due to the Pharmacy Window being closed. We were directed by Control to return to our housing units without ever receiving our doctors' ordered CC-Meds. These meds were completely denied and never made up in any manner. We were told that the Window was closed due to an alleged Staff Meeting; however, it was later disclosed to me by Nursing Staff that a Going Away Party was held for a staff member. In any event, neither reason is a legitimate medical factor to simply arbitrarily deny our doctor's prescribed CC-Meds. It is unacceptable. Medical Staff simply cannot unilaterally decide to "close up" the Medication Window and deny said meds! If this behavior is not corrected, then Medical Staff will have a green light to unilaterally and capriciously deny a doctor's order at any time and personal whim absent any legitimate medical reason to do so.

    Moreover, this is a continuing issue that warrants immediate corrective action. For example, I have been forced to file two pending Medical Grievances (i.e. MG # 155003 & 157592), regarding similar refusals to comply with the treating physician's orders. Evidently a culture of gross reckless disregard permeates throughout the CMS DCC Medical Staff despite all the negative media attention and despite the Agreement between the U.S. Justice Department and the State of Delaware.

    In closing, I pray that this matter is corrected and that further action becomes unnecessary. Thank you for your time and consideration with this serious issue.

Respectfully,

*[signature]*                                                    6-5-08

Daryl Andrus                                                     Date

C.C. Perry Phelps, Warden of DCC,
    Honorable J. Martin III, State's Independent Monitor, CMS Delaware Regional Offices

Exhibit C

- 8 -

inmate at BWCI who was inappropriately treated with a topical cream for an infection on her face, but who did not see the doctor for six days, by which time she had developed cellulitis, a deep skin infection that ultimately required hospitalization. Our investigative findings and the State's stipulation are also consistent with reports that DCC staff failed to properly diagnose and treat an MRSA infection in an inmate for four months in 2005. This failure to recognize and treat MRSA allegedly caused the inmate to be hospitalized for five weeks, lose the skin on his scrotum, and undergo painful skin grafts, resulting in permanent deformity.

Our investigation confirmed that the existence of the above inadequacies place inmates and staff at risk of acquiring the infection and passing it to others in the community beyond the prison walls. We also found that identification and treatment of skin infections at the facilities is inadequate, including failure to culture and treat wounds. We found that facility staff does not keep adequate logs of skin infections, which prevents staff from being able to analyze data and identify potential sources of transmission. Notably, in many cases physicians were prescribing the antibiotic Keflex, which not only is rarely effective for skin infections, including MRSA, but actually leads to prolonged infection and increased opportunities for the infection to spread. Finally, we found that laundry practices at the Facilities are inadequate to prevent the spread of skin infections, including MRSA.

### 6. Medication Administration and Management

The State's expert found that prescribed medications are routinely discontinued or delayed and that the current vendor has no systems in place for ensuring that medications do not run out, for notifying inmates when their medications have arrived, or for verifying that the vendor is providing inmates with the correct medications.

Our investigation confirmed these deficiencies which put inmates at risk of harm, particularly those with chronic conditions such as HIV. We observed significant lapses in medication, due either to lack of availability of medications or the failure to administer medications consistently. For example, one inmate had missed 20 consecutive days of his anti-viral medication used to treat the HIV, a potentially life-threatening situation; another inmate with HIV had a one month lag in receiving his HIV medications.

- 9 -

We also found that serial refusals to take medications were not monitored. Numerous inmates missed three or more doses of medications on three consecutive days, without any evidence of follow-up by the prescribing practitioner, or evidence that the inmate was sought out or counseled.

The State's expert found that numerous systemic problems with medication administration and management exist at the facilities, including: failure to distribute medications at the proper time intervals, leading to over- or under-prescribing medications; failure to provide necessary food at night to diabetic inmates; failure to properly monitor whether inmates are actually swallowing their medications; and pre-pouring medications.

Our investigation found similar deficiencies. Our review of medication administration records at HRYCI revealed that approximately ten percent of the entries were left blank, indicating that inmates had not received their medication, or that the medication administration was undocumented. We also found that the State routinely prescribes Keflex, an antibiotic, for skin infections, despite the fact that Keflex is rarely effective when used to treat skin infections. We also learned that the State plans to administer each dose of medication from stock bottles, instead of filling prescriptions for each patient, a practice which we believe will lead to poor inventory control, diversion, error, and lack of accountability.

B.  **MENTAL HEALTH CARE**

The responsibility to provide adequate medical care includes mental health care. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 763 (3d Cir. 1979); Tillery v. Owens, 907 F.2d 418 (3d Cir. 1990). The State is constitutionally required to provide adequate mental health care to inmates with serious mental or emotional disturbances. The failure to provide necessary psychological or psychiatric treatment to such individuals will result in the "infliction of pain and suffering just as real as would result from the failure to treat serious physical ailments." Inmates of Allegheny County Jail, 612 F.2d at 763. The key to determining whether the State has provided constitutionally adequate mental health care depends on whether inmates have reasonable access to "medical personnel qualified to diagnose and treat such illnesses or disturbances." Id.

The State's mental health expert found substantial deficiencies with the mental health care provided at the facilities. The State's expert conducted a number of on-site

Exhibit D

## AFFIDAVIT OF DAVID WILLIAMSON

1. I, David Williamson, am the Affiant listed above and do depose and state the following in support of Darryl Andrus:

2. Affiant has known Andrus since late 1997.

3. Affiant is housed in S-1, C-Tier, which is the same housing unit and tier that Andrus lives on.

4. Affiant is aware of Andrus' acute pain and suffering by and through direct repeated observation.

5. Affiant is aware that Andrus suffers from a gun shot wound to his back and that residual tangible injuries from same has and does cause Andrus to suffer acute pain about his back, hip, and right leg, and that often suffers muscle spasms in his back and leg, which renders Andrus incapacitated and immobile with excruciating pain.

6. Affiant has personal knowledge that Andrus' excruciating pain requires continuous pain and nerve medications, and muscle relaxers ("medications") just to maintain his significantly impaired and difficult daily activities.

7. Affiant has personal knowledge that the medications Andrus does receive is often inadequate at managing his excruciating pain and suffering and that Andrus nevertheless suffers significant impairment of his normal daily activities: such as showering, sleeping, promoting good health via meaningful exercise; significantly impaired ability to stand or sit for periods exceeding twenty minutes; significantly impaired mobility and range of arm and leg motion; significantly impaired ability to lift weights of ten pounds; significantly impaired ability to promote healthy social relationships through gatherings or religious activities, and significantly impaired ability to walk for periods of over twenty minutes.

8. Affiant has personal knowledge that when Andrus is not provided his medications he is exposed to pain and suffering that is so acute that Andrus is rendered incapacitated and wreathing in agony for extended periods of time, and he is often unable to even get his meals, or attend programs, or shower at all.

1

9. For example, Affiant has knowledge and personally observed Andrus during a recent bout when Andrus was denied his medications. (e.g. 2-13-08 until it was resumed in part --neuroton- on 03-05-08, and finally resumed in full on 3-10-08).

10. During this period Andrus was completely incapacitated and for all constructive purposes Andrus was disabled: He missed multiple meals and had to get assistance from Lt. Salis to have a meal brought to Andrus' housing unit; he missed his programs; he stayed in his bunk all day and all night from 02-27-08 to 03-03-08 and failed to shower or exercise only leaving once to attend a visit with his aged mother and beg her to contact someone for assistance; he was forced to beg DCC Staff, Sgt. Carpenter and C/O Estridge of S-building for assistance; and he was wholly unable to assist Affiant with the preparation of Andrus' complaint.

11. Andrus requested Affiant to assist him and draft and file a complaint with the Delaware District Court for CMS's failure to provide him either his prescribed medications and/or its failure to conduct Chronic Care Clinics in a timely fashion, which resulted in continuous and pervasive medication interruptions; however, absent any legitimate medical factors.

12. The above is the product of Affiant's personal knowledge and it is True and Correct.

SWORN and SUBSCRIBED before me this 12 day of March 2008.

David Williamson, SBI # 183022

Timothy J. Martin
Notary Public
Commission expires: June 14, 2008

2

AFFIDAVIT OF RICHARD WILSON

1. I, Richard Wilson, am the Affiant listed above and do depose and state the following in support of *Andrus v. CMS, et al*, CA No. 08-251-GMS:

2. Affiant has personally known Daryl Andrus nearly ten years.

3. Affiant has been housed in S-1 unit along with Andrus for nearly this entire time and in fact has resided directly across the hall from Andrus on C- Tier for over this past year.

4. Affiant is intimately aware that Andrus suffers substantial pain and suffering and mental and emotional distress that is directly related to a past spinal injury, which was caused by a gun-shot wound to his back.

5. Andrus' commonly suffers acute pain and muscle spasms of the back and right leg; he has trouble with has balance, mobility, and ability to walk, stand, sit, or exercise for periods in excess of ten or twenty minutes.

6. Andrus must take continuous and regular pain and nerve damage medications, and muscle relaxers to manage his significant suffering and enable him to function at even a substandard level.

7. When Andrus is denied adequate meds or is provided substandard substitutes, Andrus becomes incapacitated and his pain and suffering is exponentially increased; he is frequently unable to perform the following: unable to get out of bed, walk, stand, sit, shower, and/or concentrate, and he becomes highly agitated, frustrated, angry, and depressed.

8. Indeed, it has been Affiant's direct observation that when Andrus is provided adequate and consistent meds, he is not pain or muscle spasm free but is relatively functional; however, when Andrus is denied said adequate meds, he simply wreaths in agony bed-ridden and is completely dysfunctional.

9. For example, Affiant became immediately aware that Andrus had experienced a denial of adequate meds from around 02-15-08 through 03-10-08 based upon the following:

- Because several times Andrus was unable to make the one-third mile walk to the main chow hall (central meal area), and alternatively had to beg Security Staff to retrieve his meals for him. Andrus specifically, begged C.O. Estridge and Lieutenant Silas. It was Affiant's present sense impression that because Andrus, who is a fiercely independent, was utterly humiliated for having to request help from Staff;
- Because Andrus was constantly irritable, intolerant, angry, frustrated, upset, and generally listless during this period, and Affiant was aware that Andrus was suffering terrible bouts of insomnia due to his continuous muscle spasms, etc; and

- Because Andrus was generally uninterested and/or unable to do those things which he normally did (i.e. significant impairment of his normal daily activities) (i.e. He and I and another would go out to the yard to work-out –Andrus called this his physical therapy session- but he was unable to do any exercise during the above period; also Andrus is an avid artist and he frequently attends Law Library sessions, but he also was forced to miss these normal activities; and Andrus was unable to attend to his daily hygiene consistently as he was unable to stand in the shower without risk of a massive muscle spasm which exposed him to serious falling or collapsing incidents.

10. Also, Andrus has experienced several disciplinary actions due to multiple altercations/arguments with peers; however, while receiving adequate meds Andrus is always friendly, personable, and respectful. It is only when Andrus is denied said needed meds and experiences undue pain and suffering and significant insomnia that he experiences an adverse personality transformation that threatens his classification status, institutional record, and his ability to nurture healthy relationships. Andrus' distress is tangible and painful for Affiant to even witness.

11. The above is a result of Affiant's personal observation and experience, and it is True and Correct.


Signed and Sworn before me this  22nd  day of May 2008.


_Richard Wilson_  
Richard Wilson  
S-1, C-Tier  
1181 Paddock Rd.  
Smyrna, DE 19977

_Timothy J. Mart_  
Notary Public  
Commission expires: June 14, 2008



I/M: Daryl G. Andrus
SBI# 167816  UNIT S-L/C-10
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

U.S. District Court
844 King St.
Lockbox 18
Wilmington, DE 19801-3507